**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DAVE MABLE,                          :
       Petitioner,               :       1:11-cv-1313
                              :
       v.                        :       Hon. John E. Jones III
                              :
BRIAN V. COLEMAN, *et al.*,          :
       Respondents.              :

## MEMORANDUM

### April 23, 2014

On July 14, 2011, Petitioner Dave Mable, an inmate currently confined at

the Fayette State Correctional Institution in LaBelle, Pennsylvania, filed the instant

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). He

challenges a 2008 guilty plea in the Court of Common Pleas of York County,

Pennsylvania. (Doc. 1). For the reasons that follow, the Petition will be denied.

## I.      BACKGROUND

On August 27, 2007, at approximately 12:48 a.m., Mable and his co-

defendant, Dyqueal Larry, met with Christine Zelinsky and Francis Trimboli on a

street in York City, Pennsylvania. (Doc. 11-1, Affidavit of Probable Cause). The

parties began arguing over a drug transaction and Mable's co-defendant fired a

gunshot. (*Id.*). Seconds later, Mable fired a gunshot which struck Zelinksy in the

neck and killed her. (*Id.*). Mable and his co-defendant then fled the scene on foot.

(*Id.*).

On September 5, 2007, Aaron Grice and his girlfriend, Jonelle Grim, were interviewed at the York County Prison, where they were detained on other charges. (*Id.*).  They both stated that on the night of the homicide, they were out driving and picked up Mable and his co-defendant.  (*Id.*).  Mable and his co-defendant both had guns on their person and indicated that they needed a ride "out west."  (*Id.*).  While in the car, Mable told Grice that "some dude had just tried to rob him so he had to air him out" and "I shot him in the back."  (*Id.*).  A few days after the homicide, Mable was arrested on unrelated drug charges and placed in the same "pod" with Grice at the York County Prison.  (*Id.*).  Grice saw on the news that a girl was actually shot on the night of the homicide.  (*Id.*).  While incarcerated, Grice asked Mable why he shot the girl.  (*Id.*).  Mable stated that he and his co-defendant got into an argument with Trimboli over drugs and his co-defendant fired a shot to scare him.  (*Id.*).  Mable stated that he then fired a shot at Trimboli, but the girl got in the way and was hit by the gunshot.  (*Id.*).

On September 6, 2007, Grice and Grim were re-interviewed at the prison and were shown photo lineups of Mable and his co-defendant.  (*Id.*).  Grice positively identified Mable and his co-defendant as the two men he gave a ride to on the night of the homicide and stated that Mable confessed to him in jail.  (*Id.*).

Grim positively identified Mable as being in the car on the night of the homicide. (*Id.*).

Based on the above information, on September 11, 2007, Detective Alan E. Clarkson of the York City Police Department filed criminal charges against Mable for the following crimes: one count of homicide and one count of firearms without a license. (Doc. 11-1, Criminal Complaint). Additional charges of third degree murder, first degree murder, and criminal conspiracy were subsequently filed against Mable. *See Commonwealth v. Mable*, No. CP-67-CR-0000684-2008 (York County, February 11, 2008).

On December 8, 2008, Mable pled guilty to third degree murder. (Doc. 11-1, pp. 4-14, Guilty Plea Colloquy; pp. 15-34, Transcript of Guilty Plea Hearing). On January 26, 2009, Mable was sentenced to eighteen (18) to forty (40) years in a State Correctional Institution on the third degree murder charge. (Doc. 11-1, pp. 36-59, Transcript of Sentencing). Mable was also sentenced to one (1) to two (2) years in a State Correctional Institution on an unrelated drug charge, to run consecutive to his third degree murder sentence. (*Id.*). Therefore, his total sentence was nineteen (19) to forty-two (42) years in a State Correctional Institution. (*Id.*).

Mable did not file a direct appeal to the Pennsylvania Superior Court. On

January 22, 2010, Mable filed a *pro se* petition under Pennsylvania's Post

Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, *et seq.* ("PCRA").  (Doc. 11-1, pp.

61-73, PCRA Petition).  He argued ineffective assistance of counsel in that his

attorney failed to file either a motion to suppress written and oral "jailhouse

statements" or a motion to sever his trial from his co-defendant's trial; he argued

that his plea was not voluntary; and, he argued that Grice later admitted that he lied

in his statements made to the police.  (*Id.*; Doc. 11-1, pp. 84-86, PCRA Hearing

Transcript; Doc. 16).  At the PCRA hearing, Mable testified that he asked his trial

counsel to file a motion to suppress the "jailhouse statements" but the attorney said

it was not worth filing.  (Doc. 11-1, pp. 84-85, PCRA Hearing Transcript).  Mable

also testified that he never asked his trial counsel to file a motion to sever his trial

from his co-defendant's trial.  (Doc. 11-1, p. 86, PCRA Hearing Transcript).


Following the PCRA hearing, Mable's request for PCRA relief was denied

on July 16, 2010.  (Doc. 11-1, pp. 79-121, 125-39, PCRA Hearing Transcripts; pp.

140-42, PCRA Order).  On August 11, 2010, Mable filed a notice of appeal to the

Pennsylvania Superior Court.  (Doc. 11-1, p. 145, Notice of Appeal).  Christopher

D. Moore, Esquire, filed a statement of matters complained of pursuant to

Pa.R.A.P. 1925(b) on September 29, 2010, raising the following issues on appeal:

    I.       Whether the PCRA court abused its discretion in not granting the appellant a new trial based on newly or after discovered evidence of a witness who admitted that he lied to the police during the investigation regarding the appellant's involvement in the homicide.

    II.     Whether the PCRA court abused its discretion [in] not finding trial counsel ineffective for failing to file a motion to withdraw the appellant's plea and failing to grant the appellant a trial.

    III.    Whether the PCRA court abused its discretion [in] finding the appellant's plea voluntary and failing to grant the appellant a new trial.

(Doc. 11-1, pp. 148-49, Rule 1925(b) Statement) (citations omitted).

After filing the 1925(b) Statement, Attorney Moore filed a Petition to Withdraw as Mable's attorney and a no-merit letter pursuant to *Turner/Finley*.[1]

The trial court filed an Opinion on October 12, 2010 finding without merit Mable's argument that his guilty plea was not voluntary.  (Doc. 11-1, pp. 151-60, Trial Court's 1925(a) Opinion).

By Memorandum Opinion dated May 23, 2011, the Pennsylvania Superior Court affirmed the PCRA Court's Order dismissing Mable's PCRA petition.  (Doc. 11-1, pp. 161-67, Pennsylvania Superior Court Memorandum Opinion).  The

---

[1] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) (establishing the procedures to be followed, pursuant to Pennsylvania law, to allow withdrawal of counsel in collateral proceedings where counsel finds the appeal to be meritless); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988) (discussing the procedure outlined in *Turner* by which PCRA counsel can withdraw from representation by filing a "no-merit letter").

Pennsylvania Superior Court also granted Attorney Moore's Petition to Withdraw.

(*Id.*).  No petition for allowance of appeal to the Pennsylvania Supreme Court was

filed.

On July 14, 2011, Mable filed the instant Petition for Writ of Habeas Corpus

in which he raises the issue of ineffective assistance of counsel as follows:

> Guilty plea counsel failed to object to the trial court's erroneous
> instructions to petitioner regarding the Commonwealth's burden of
> proof on an affirmative defense.  PCRA counsel failed to argue prior
> counsel's ineffectiveness.

(Doc. 1, p. 5).

In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), and

*Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to

Mable that he could either have the Petition ruled on as filed, that is, as a § 2254

Petition for Writ of Habeas Corpus and heard as such, but lose his ability to file a

second or successive Petition, absent certification by the court of appeal, or

withdraw his Petition and file one all-inclusive § 2254 Petition within the one-year

statutory period prescribed by the Antiterrorism Effective Death Penalty Act

("AEDPA").  (Doc. 4).  Mable did not file the Notice of Election form, therefore

the Court Ordered that his Petition proceed as filed, and the Court issued a Show

Cause Order.  (Doc. 5).  On September 29, 2011, the Court received a letter from

Mable in which he stated that he never received the Notice of Election form, but

that he was satisfied with the Court's decision to proceed on the Petition as filed. (Doc. 7).

On October 27, 2011, Respondents filed a response to the Habeas Petition, only addressing the issues of exhaustion and procedural default. (Doc. 11). Respondents also requested that the Court enter an Order deferring its response to the Habeas Petition on the merits. (Doc. 12). By Order dated October 31, 2011, the Court granted Respondents' motion to defer a response to the Habeas Petition on the merits. (Doc. 13). Mable filed a traverse on December 12, 2011. (Doc. 16). On October 16, 2013, an Order was entered directing Respondents to file a supplemental response addressing the merits of the Habeas Petition. (Doc. 21). Respondents filed their supplemental response on January 31, 2014. (Doc. 26).

## II.   STANDARD OF REVIEW

A Habeas Corpus Petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a); *Estelle*, 502 U.S. at 67-68 (1991); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104 (3d Cir. 1997).

## A.    Exhaustion

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant has exhausted the remedies available in the courts of the state', (2) no such state remedy is available, or (3) available remedies are ineffective to protect the applicant's rights.  28 U.S.C. § 2254(b)(1)."  *Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998).  "The exhaustion requirement is satisfied when the state courts have had an opportunity to pass upon and correct alleged constitutional violations."  *Evans v. Court of Common Pleas, Delaware County, Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992).  The exhaustion requirement "is not a mere formality. It serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a federal prisoner's federal rights."  *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986).  "Unless it would be patently futile to do so [state prisoners] must seek relief in state court before filing a federal habeas petition...."  *Santana v. Fenton*, 685 F.2d 71, 77 (3d Cir. 1982).

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies.  *McMahon v. Fulcomer*, 821 F.2d 934, 940 (3d Cir. 1987).

The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). Fair presentation requires that the "substantial equivalent" of a petitioner's federal habeas claims be presented to the state courts. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

The merits of a procedurally defaulted claim may not be considered by federal courts "unless the applicant establishes 'cause' to excuse the default and actual 'prejudice' as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental 'miscarriage of justice.'" *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

This Court previously examined Mable's exhaustion of his state court remedies and found that he has not exhausted his current habeas claim. *See* (Doc. 21). However, under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), this Court noted that the inadequate assistance of counsel at initial-review collateral proceedings may establish cause for procedural default of a trial counsel's ineffectiveness

9

claim.  (Doc. 21, p. 9).  The application of *Martinez* and the merits of the claim will therefore be addressed.

### B.    Merits

"The Antiterrorism and Effective Death Penalty Act of 1996  ("AEDPA") modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).[2]  *See generally Knowles v. Mirzayance*, 556 U.S. 111 (2009); *Gattis v. Snyder*, 278 F.3d

---

[2]  28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

222, 234 (3d Cir. 2002).  The Supreme Court has held that the "contrary to" and

"unreasonable application" clauses of § 2254(d)(1) have independent meaning.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

In *Renico v. Lett*, 559 U.S. 766 (2010), the United States Supreme Court

explained that "an *unreasonable* application of federal law is different from an

*incorrect* application of federal law." *Id.* at 773 (quoting *Williams*, 529 U.S. at

410).  Therefore, a federal court may not grant habeas relief simply because it has

concluded in its independent judgment that the state court decision applied clearly

established federal law erroneously or incorrectly.  *Id.*  Rather, the state court

application must be objectively unreasonable.  *Renico* added that this distinction

creates a substantially higher threshold for obtaining relief under § 2254 and

imposes a highly deferential standard for evaluating state court decisions.  The

*Renico* Court noted that "state-court decisions [must] be given the benefit of the

doubt."  *Id.* (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

This deferential standard of review applies to state court decisions on

ineffective assistance of counsel claims.  *Bell*, 535 U.S. at 694-98.  Furthermore,

resolution of factual issues by the state courts are presumed to be correct unless the

petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. §

2254(e)(1).  *See Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the

clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the

unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

### A.   *Martinez v. Ryan*

In *Martinez*, the United States Supreme Court stated that "[i]nadequate

assistance of counsel at initial-review collateral proceedings may establish cause

for a prisoner's procedural default of a claim of ineffective assistance at trial."

*Martinez*, 132 S. Ct. at 1315-17.  Further, under state law, where claims of

ineffective assistance of trial counsel must be raised in an initial-review collateral

proceeding, a procedural default "will not bar a federal habeas court from hearing a

substantial claim of ineffective assistance at trial if, in the initial-review collateral

proceeding, there was no counsel or counsel in that proceeding was ineffective."

*Martinez*, 132 S. Ct. at 1320.  However, *Martinez* does not provide for a claim of

ineffective assistance of post-conviction counsel.  *See Martinez*, 132 S. Ct. at 1319-

20; *Ohler v. Lamas*, 542 Fed. Appx. 205, 208 n. 3 (3d Cir. 2013).

As stated in this Court's Order of October 16, 2013, the issues that Mable

raised to the PCRA and Superior Courts did not concern Mable's current claim of

ineffective assistance of counsel due to trial counsel's failure to object and

subsequently file a motion to withdraw Mable's guilty plea because the trial court

erroneously instructed Mable regarding the Commonwealth's burden of proof. (Doc. 21, p. 8).  This Court therefore found that Mable has not exhausted his current habeas claim.  (*Id.*).  However, given Mable's *pro se* status, Respondents were directed to file a supplemental response addressing *Martinez* and the merits of Mable's Habeas Petition.  (Doc. 21, p. 11).

*Martinez* would effectively allow Mable to raise his ineffective assistance of trial counsel claim in federal habeas court if, in the initial-review collateral proceeding, counsel was ineffective.  *See Martinez*, 132 S. Ct. at 1320. Respondents argue that *Martinez* does not provide grounds for relief, as it was ultimately Mable's fault that his claim was procedurally defaulted.  (Doc. 26, pp. 6-7).  As Respondents state, Mable pled guilty to third degree murder but never filed a motion to withdraw his guilty plea and never filed a direct appeal.  (Doc. 26, p. 7).  Mable filed a *pro se* PCRA Petition.  He was appointed counsel and was represented by Attorney Moore at his PCRA hearing.  The PCRA Court denied relief and Attorney Moore filed a notice of appeal on behalf of Mable.  However, Attorney Moore also filed a *Turner/Finley* brief and a Petition to Withdraw as counsel.  Respondents contend that, at this point, Mable could have proceeded *pro se* or with private counsel, but Mable failed to do so.  (Doc. 26, p. 8).  Therefore, they argue that Mable caused the procedural default of his claim against plea

counsel.  (Doc. 26, p. 8).

The Superior Court reviewed Attorney Moore's petition to withdraw and no-merit letter and granted his request.  In determining whether to allow Attorney Moore to withdraw, the Pennsylvania Superior Court thoroughly examined the record and discussed the requirements for proper withdrawal pursuant to *Turner/Finley*.  (Doc. 11-1, p. 161-67, Pennsylvania Superior Court's Memorandum Opinion).  The Superior Court "found no other claims of arguable merit that Attorney Moore could have raised on appeal" and granted his petition to withdraw as counsel.  (*Id.*).

The Superior Court also found that the PCRA Court Opinion "accurately disposes of the issues presented by [] [Mable], revealing that all three of his claims are meritless."  (Doc. 11-1, p. 167, Pennsylvania Superior Court Memorandum Opinion).  The PCRA Court examined the three issues raised on appeal by Mable. First, the Court determined that Mable should not be granted a new trial based on his claim of after-discovered evidence that Grice lied to police.  (Doc. 11-1, p. 152-54, Trial Court's 1925(a) Opinion).  The Court noted that Mable himself testified that he was the shooter.  (*Id.*).

Second, the PCRA Court discussed Mable's claim in his 1925(b) statement that trial counsel was ineffective for failing to file a motion to withdraw his guilty

14

plea.  (Doc. 11-1, p. 148, 1925(b) Statement).  The PCRA Court noted that Mable asked trial counsel to file a motion for reconsideration of sentence and to withdraw his guilty plea, and that Mable's relative also contacted trial counsel requesting the same.  (Doc. 11-1, p. 158, Trial Court's 1925(a) Opinion).  Mable stated that he wished to withdraw his plea because he was not satisfied with the sentence he received.  (Doc. 11-1, p. 98, PCRA Hearing Transcript).  Trial counsel informed Mable that filing a motion for reconsideration could result in a longer sentence, and there was no merit in seeking reconsideration as the Court was thorough at the sentencing hearing.  (Doc. 11-1, p. 116, PCRA Hearing Transcript).  The PCRA Court examined Mable's written and oral plea colloquies, and determined that Mable "has presented no evidence that would have supported a motion to withdraw his plea, had such a motion been filed."  (Doc. 11-1, p. 158, Trial Court's 1925(a) Opinion).

Third, the PCRA Court examined the oral and written plea colloquies and found no merit in Mable's argument that his pleas were not voluntary.  (Doc. 11-1, pp. 159-60, Trial Court's 1925(a) Opinion).

The Pennsylvania Superior Court adopted the trial court's Opinion as its own and affirmed the PCRA Court's Order dismissing the PCRA Petition.  (Doc. 11-1, pp. 161-67, Pennsylvania Superior Court Memorandum Opinion).

Upon review, *Martinez* does not provide Mable the opportunity to raise his new claim of trial counsel ineffectiveness in the instant Habeas Petition as counsel was not ineffective in the initial-review collateral proceeding.

Additionally, Mable has not demonstrated cause or prejudice to excuse the procedural default of his claim. *See Tome v.* Strickland, 167 Fed. Appx. 320, 325 (3d Cir. 2006) ("But for ineffective assistance of prior counsel to serve as 'cause' to excuse a procedural default, habeas petitioners must first exhaust the ineffective assistance claim itself in state court, or show cause and prejudice for that failure to exhaust"); *Gillette v. Cameron*, 2013 WL 1482780 (M.D. Pa. 2013) (petitioner failed to show that he raised and successfully exhausted his ineffective assistance of counsel claims); *Morales v. Cameron*, 2012 U.S. Dist. LEXIS 39877, *10-12 (E.D. Pa. 2012) (concluding that the petitioner, who did not present in his claim of ineffectiveness relating to consecutive sentences in a PCRA petition, could not demonstrate cause and prejudice or a resulting miscarriage of justice to excuse procedurally defaulting the claim). As stated, Mable's Habeas Petition does not raise the same claims of ineffective assistance of trial counsel as those raised in his PCRA Petition. Assuming *arguendo* that Mable's claim is not procedurally barred, an examination of his plea reveals that trial counsel was not ineffective for failing to file a motion to withdraw his plea and he was properly instructed on the burdens

of proof.

### B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test.  The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  *Id*. at 687; *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001).  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *Jermyn*, 266 F.3d at 282; *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996).  If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, *Strickland*, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." *United States v. Wiener*, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001).  A decision supported by "reasonable professional judgment" does not constitute ineffective

assistance of counsel.  *Burger v. Kemp*, 483 U.S. 776, 794 (1987).  Further, counsel

cannot be deemed ineffective for not pursuing a meritless claim.  *Hartey v.*

*Vaughn*, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694;

*Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).  "Without proof of both

deficient performance and prejudice to the defense ... it could not be said that the

sentence or conviction resulted from a breakdown in the adversary process that

rendered the result of the proceeding unreliable, and the sentence or conviction

should stand."  *Bell v. Cone*, 535 U.S. 685, 695 (2002) (internal quotations and

citation omitted).  In assessing whether the result of the proceeding might have

been different, a reviewing court must consider the "totality of the evidence before

the judge or jury."  *Strickland*, 466 U.S. at 695; *Jermyn*, 266 F.3d at 283.

However, "a court can choose to address the prejudice prong before the

ineffectiveness prong and reject an ineffectiveness claim solely on the ground that

the defendant was not prejudiced."  *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir.

2006).

In evaluating whether counsel's performance was deficient, this Court must defer to counsel's tactical decisions, avoid the distorting effects of hindsight and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. In his Habeas Petition, Mable argues that trial counsel was ineffective for failing to object to and failing to file a motion to withdraw his guilty plea because the trial court erroneously instructed him on the Commonwealth's burden of proof. (Docs. 1, 2). In this Court's Memorandum and Order dated October 16, 2013, it was noted that Mable attempted to amend his Petition and broaden his claim of ineffective assistance of counsel by including the issue of whether the PCRA Court erred by deeming his plea intelligently and understandably made. (Doc. 21, p. 3 n. 5). He further tried to expand his claim of ineffective assistance of counsel to include counsel's deficiencies before, during and after the plea agreement. (*Id.*). This Court stated that Mable would not be permitted to amend his Petition. (*Id.*). However, out of an abundance of caution, the voluntariness of Mable's plea will also be addressed.

This Court finds that the record relied upon by the Superior Court supports a finding that plea counsel's failure to file a motion to withdraw Mable's guilty plea was reasonable. The trial court had an ample basis for finding that there was no evidence to support a motion to withdraw Mable's plea and that he entered a

knowing and voluntary plea.  This finding was based upon the written and oral plea

colloquies, during which Mable explicitly acknowledged that his plea of guilty was

made with full knowledge and understanding of the nature of the offense and the

maximum prison term that the Court could impose.  (Doc. 11-1, pp. 11-14, Guilty

Plea Colloquy; pp. 30-32, Transcript of Guilty Plea Hearing).  He was not induced

to enter the plea by a promise of a set term of incarceration made by either the

prosecution or his own counsel.  (*Id.*).  He freely acknowledged that he was

entering a guilty plea which exposed him to a period of incarceration of forty (40)

years.  (*Id.*).  The written guilty plea colloquy also acknowledges that the total

possible aggregate sentence Mable could receive, if all sentences were made

consecutive, would be life plus one hundred forty-seven (147) years.  (Doc. 11-1,

pp. 9-10, Guilty Plea Colloquy).

As stated, Mable argues in the Habeas Petition that the trial court improperly

instructed him on the burdens of proof and trial counsel was ineffective for failing

to object or withdraw his guilty plea.  (Doc. 1).  Respondents contend that Mable

was properly instructed on the relevant burdens of proof.  (Doc. 26, pp. 6, 10-11).

The written guilty plea colloquy explains that it was the Commonwealth's burden

to prove Mable guilty beyond a reasonable doubt, not Mable's burden.  (Doc. 11-1,

pp. 7-8, Guilty Plea Colloquy).  The written colloquy expressly states:

Do you understand that you are presumed to be innocent and you need not admit that you committed the offenses by pleading guilty, but by pleading guilty, you give up and waive your absolute right to stand on your presumption of innocence which would require the *Commonwealth* to prove your guilt in a trial either before a judge or a jury?
...
That the *Commonwealth* has the burden of introducing testimony or other evidence which will convince the twelve jurors unanimously or [sic] your guilt beyond a reasonable doubt, which is a doubt that would cause a reasonable, careful, and sensible person to hesitate before acting upon a matter of importance in his/her own affairs?
...
That you can testify, call witnesses, or introduce other evidence to contradict the Commonwealth's evidence and/or support your innocence, but cannot be required to do so?

(*Id.*) (emphasis added).  Mable answered, "Yes", to these questions.  (*Id.*).

Additionally, during the oral plea colloquy, the trial court judge stated:

THE COURT:  You understand that you are [] presumed to be innocent and you do not have to admit that you committed these offenses, but by pleading guilty you give up and waive your absolute right on your presumption of innocence, which would require the *Commonwealth* to prove you guilty by a jury or a judge; do you [] understand this?
...
MR. MABLE:  Yes.
...
THE COURT:  And you understand that if you went to trial and you raised the issue of self defense that the *Commonwealth* would have to prove beyond a reasonable doubt that you did not do that in self defense; do you understand that?

MR. MABLE:  Yes.

THE COURT:  And I take it that's a defense that you fully explored with your attorney?

MR. MABLE:  Yes.

THE COURT:  Is that correct, Mr. Leslie?

ATTORNEY LESLIE:  We discussed that on several occasions, Your Honor.

THE COURT:  And essentially --

ATTORNEY LESLIE:  Your Honor, the way that we discussed it several times is since Mr. Trimboli actually did not lose his life, that it would be actually difficult to prove self defense for--

THE COURT:  I would tend to agree that it would be a case that it -- it would be difficult in raising the self defense claim, given that self defense was used.  But I wanted to make certain on the record, and frankly, I'm familiar with both defense lawyers, and I wanted -- and they both do an excellent job.  I wanted to make sure on the record that we have everything out so when the PCRA's get filed, we'll have everything on the record.

Just so that you're aware, and again, I'm sure that your attorney went over this with you, Mr. Mable, but in order to convict you of third degree murder, the *Commonwealth* would have to prove that this was a killing with malice, that they would have to prove that the victim is dead, and obviously, that is not in dispute, and second, they would have to prove that you killed her, and third, they would have to prove that you did it with malice.

What malice means is that they would have to prove that you acted either with the intent to kill or second, an intent to inflict serious bodily harm, or third, a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty, indicating an unjustified disregard for the probability of death or great

bodily harm and an extreme indifference to the value of human life.  A conscious disregard of an unjustified high risk that your actions might cause death or serious bodily harm.

The *Commonwealth* would have to prove that under your version you meet these offenses.  However, the issue that could -- you raise, that could reduce your crime.  Even if your self defense issue would not work, self defense would be a complete defense to the case, but you could argue for a claim under particularly involuntarily -- or actually voluntary manslaughter.

The crime of voluntary manslaughter, you could argue to the jury that they would be unable to find malice if they were satisfied beyond a reasonable doubt that you were not acting either under a sudden and intense passion resulting from a serious provocation by the victim or another person that who you were trying to kill and you may negligently or accidently killed the victim, or under reasonable belief that the circumstances were such that if they existed would justify the killing.

So you could argue to the jury that while you did the killing, that even if they didn't believe the self defense, if they felt that your self defense was a reasonable belief, that would reduce the crime from third degree murder to voluntarily manslaughter and I'm sure that your attorney discussed that; is that correct?

MR. MABLE:  Yes.

(Doc. 11-1, pp. 18-21, Transcript of Guilty Plea Hearing) (emphasis added).

The trial court clearly explained to Mable that the Commonwealth had the burden of proving its case beyond a reasonable doubt.  Mable never indicated that he did not understand his plea or the burden of proof.  At the guilty plea hearing, Mable stated that he had ample time to speak to his attorney about the plea, he was satisfied with his representation, and it was his decision to enter the guilty plea.

(Doc. 11-1, p. 32, Transcript of Guilty Plea Hearing).  In his memorandum of law, Mable now argues that the trial judge mischaracterized his defense as one of self-defense; rather, he argues that he asserted "the defense of accident" and he "accidentally shot the girl" while trying to protect his co-defendant.  (Doc. 2, pp. 4-5).  Mable contends that the trial court should have instructed him that the Commonwealth had the burden to "disprove" that he accidentally shot the girl.  (Doc. 2, p. 7).  However, the trial court properly and thoroughly explained that the Commonwealth had the burden of proving its case beyond a reasonable doubt.  To the extent that Mable regrets pleading guilty or is not satisfied with his sentence, *see* (doc. 16, p. 14), this claim is meritless.  *See U.S. v. Davis*, 106 Fed. Appx. 788, *2 (3d Cir. 2004) (stating that  "'a change of mind' or 'the fear of punishment' are not sufficiently compelling reasons to allow a defendant to withdraw a guilty plea") (quoting *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)).  Mable also claims that he was "lied to" about the time he was going to receive.  (Doc. 11-1, p. 98, PCRA Hearing Transcript).  However, as previously stated, Mable indicated in his plea colloquies that he understood the plea and that he was entering a guilty plea which potentially exposed him to a period of incarceration of forty (40) years.  (Doc. 11-1, pp. 11-14, Guilty Plea Colloquy; pp. 30-32, Transcript of Guilty Plea Hearing).

To the extent that Mable is claiming that he did not understand what he was pleading guilty to, the record establishes that this claim is meritless.  Due process guarantees require that a defendant's plea be voluntary and intelligent.  *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Brady v. United States*, 397 U.S. 742, 748 (1970).  As such, no criminal defendant should plead to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers.  In *Boykin*, the United States Supreme Court emphasized the importance of a judge's duty in ensuring that a criminal defendant have a full understanding of what the plea connotes and its consequences by "canvassing the matter" on the record.  *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). However, the failure to specifically articulate these rights is not dispositive if the circumstances otherwise establish that the plea was constitutionally acceptable. *United States v. Stewart*, 977 F.2d 81, 85 (3d Cir. 1992), *cert. denied*, 507 U.S. 979 (1993) (finding the plea colloquy adequate despite trial court's failure to enumerate *Boykin* rights given that those rights were reviewed in prior plea colloquy that occurred only six weeks earlier).

A plea is voluntary if the accused understands the nature of the charges

against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976).  The plea cannot be induced by threats or misrepresentations and the voluntariness of a plea presents a question of law. *Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983).  A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences" and where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Brady*, 397 U.S. at 748, 756.

The trial court, at the guilty plea hearing, colloquied Mable[3] regarding his understanding of the proceedings as follows:

> THE COURT:  The maximum sentence, given the charge of third degree murder, will be 40 years in jail; do you both understand the maximum sentence?
>
> MR. MABLE:  Yes.
> ...
> THE COURT:  Has anybody offered you anything other than the Commonwealth has agreed not to seek the maximum sentences, has anyone offered you anything else?
> ...
> MR. MABLE:  No.

---

[3]  Mable's co-defendant, Dyqueal Larry, was also colloquied at the same time.

THE COURT:  ... essentially I take it that the potential sentences that you both discussed with your attorneys; is that correct?

...

MR. MABLE:  Yes.

...

THE COURT:  ... Has anybody forced you or threatened you or coerced you directly or indirectly to enter these pleas?

...

MR. MABLE:  No.

THE COURT:  Are you doing this of your own free will?

...

MR. MABLE:  Yes.

...

THE COURT:  Did you both have enough time to talk to your attorney before you read these forms and decided to enter your pleas?

...

MR. MABLE:  Yes.

THE COURT:  Are both of you satisfied with the representation of your lawyers of you in this matter?

...

MR. MABLE:  Yes.

THE COURT:  Is it your decision and your decision alone to enter the pleas?

...

MR. MABLE:  Yes.

THE COURT:  And you thoroughly understand that you don't have to enter the pleas, and if you do so, you give up all rights previously explained?

...

MR. MABLE:  Yes.

(Doc. 11-1, pp. 30-33, Transcript of Guilty Plea Hearing).

It is apparent from the transcript that the oral colloquy addressed Mable's understanding of the written guilty plea colloquy and the terms of the plea agreement.  (Doc. 11-1, pp. 18-21, Transcript of Guilty Plea Hearing).  The transcript also reveals that Mable was not coerced to enter a guilty plea, there were no intoxicating substances in his system, he understood the waiver of his trial rights, he understood the charges against him, and he was satisfied with his plea counsel.  (*Id.*).  The trial court also properly instructed Mable about the burdens of proof and clearly stated that the Commonwealth had the burden of proof.  As such, the record in this case afforded an ample basis for the PCRA Court's conclusion that Mable's plea was knowing and voluntary, and not the product of ineffective assistance of counsel.  Thus, the Superior Court's decision adopting the PCRA Court's opinion does not reflect an unreasonable application of *Strickland*, nor is it an unreasonable application of the facts considering the evidence presented in the trial court.

## C.    Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the

merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons set forth in this Memorandum, this Court will not issue a certificate of appealability.

## IV.   CONCLUSION

Trial counsel was not ineffective for failing to object to or file a motion to withdraw Mable's guilty plea and he was properly instructed on the relevant burdens of proof. Additionally, Mable's ineffectiveness claim was properly denied by the state courts, is unsupported by the record, and did not result in prejudice to him. Accordingly, the Petition for Writ of Habeas Corpus will be denied. A separate Order follows.